The opinion of the Court was delivered by
Colcock, J.
I presume no rule, on the subject of evidence, is better established than that a witness shall not be bound to criminate himself. The only difficulty arises in the application of the rule. It must be admitted, that if the question has a tendency to criminate the witness, according to the rule, he is not bound to answer. But it is said, the Court should decide this point, as to some questions. It is utterly impossible, that the Court can decide without possessing a full and complete knowledge of all the facts which it may be important for the witness to conceal: therefore something must necessarily be left to the witness ; and we have the same security for a knowledge of the fact, that he may be implicated by the answer, that we have for the knowledge of any other fact.
It was urged, that an ignorant man might not be able to decide. The Court will always so instruct a witness as to enable him, if he possess any understanding, to determine whether he may be jeopardized by the [*15 answer ; and if the answer may form *one link, in a chain of testimony, against him, he is not bound to answer. Phillips on Evid. Dunlap’s Ed. 206. 2 Espinasse Dig. 405, 16 Vesey, jun’r. 242. M’Nally, 251. King v. L. G. Cordon, 2 Douglass, 595. Honeywood v. Selwin, 3 Atkins, 276. Gates v. Hardacre, 3 Taunton, 424.[1] Under the Act against duelling, all who counsel one to fight, as well as the seconds who are engaged, are made liable to the penalties. If the witness stood in either of these relations, he might be implicated by answering the question. It is not necessary that the privity of the witness should at once appear by'the answer; nor will it be contended, that, that would have been the. case here ; but it may have formed a link in a chain of testimony extracted from him, or obtained from other sources, which may have tended to criminate him. It was contended, that on a cross-examination, the witness may have refused to answer any question which had a tendency to criminate him ; but that this question did not tend to. criminate him. This appeared to admit the whole argument of the counsel for defendant; for both the Court and the witness thought it might when connected with other matters, produce the consequence. But supposing the answer had not such tendency, arid that the State had closed there, the defendant upon his cross-examination, would naturally have *378 asked at what time and place, and under what circumstances, was the confession made. I presume it will be admitted, that an answer to this might have implicated the witness — that he was permitted to refuse to answer —that would be the result. Could it be expécted that the defendant would be convicted on the garbled testimony of a witness, and that too of so high a misdemeanor ? I presume not. If, then, there be any doubt as to the tendency of the question, I think it is obvious another would have removed the doubt; and therefore, that the presiding judge decided correctly, that the witness should not be compelled to answer the question. Although we may regret, the act is defective, yet we have no el power to legislate on the *subject. It must be referred to the pro- -* per tribunal. I do not conceive that the doctrine is calculated (as was contended,) to protect reluctant witnesses generally. For it is clear, that if a witness swear he may be implicated in the guilt of the accused if he answer, and this afterwards appear to be false, he would be liable to an indictment for perjury. It is admitted, that it might be difficult of proof; but if that were to be an objection, much testimony, which is daily received, might be excluded. Suppose a witness called to prove the acknowledgments of a defendant, which was to operate against him, should swear, that it was made to him when alone, or to him, in the presence of a person at that time dead, and this should be false. How, I ask, could he be convicted of perjury ? It was necessary that an opinion should be expressed on this point, as it may render some alteration in the act necessary.
Hayne, Attorney-General, for the motion. Drayton, contra.
But on the question, whether such an appeal can 'be sustained, I entertain no doubt. ' I think I may venture to say, that no case can be found where a new trial has been granted after acquittal, unless where it ha.s been effected by the fraud or artifice of the accused.[1] In the ease of the King v. Mawley, and three others, (from 6 Term Rep. p. 620 to 640,) two were convicted, and two acquitted. The Court were clearly of opinion, and so ordered, that a new trial should be granted, as to those who had been found guilty. The difficulty was, how they should be separated, on the second trial. Two modes were suggested. One was, to alter the venue ; the other, to make an entry on the record, that two had been improperly convicted, and then to award a new trial, as to them. Lord Kenyon says, (Id. 640,) “ I do not know that the first mode is objectionable. The second mode suggested has already been adopted. It was so in Rex v. Robbins,” and of course, I conclude it was adopted by them. I confess, that, at first, it did strike me, that perhaps, a distinction might be made when the testimony, relied on by the State, had been unexpect-*■.1.-1 edly excluded. But I am satisfied, that all cases, however de-J *termined, must stand on the same footing in this respect.
When a criminal case is put to a jury, it cannot be withdrawn, except by the consent of the accused, or by some unavoidable accident to one of the jury or the Court. The State, therefore, is bound to be ready when the case is put to the jury. I am against the motion on all the grounds.
Gantt and Johnson, JJ., concurred.

 A. D. 1812, 5 Stat. 671; Post. 181. See Acts, 1823, 6 Stat. 208; 1834, 6 Stat. 515; 2 McC. 233, 335 ; 3 Brev. 243; 1 Tread 107 ; 2 N. & McC. 181.

 See 2 Brev. 444; 3 Brev. 421, or 2 Tread. 517; 4 MoC. 254.