[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 3 
March 28, 1938. The opinion of the Court was delivered by
The General Assembly adopted a Joint Resolution, approved May 1, 1937, creating a joint legislative committee to investigate the law enforcement agencies of the State. Acts 1937, p. 1438. Pursuant to the resolution, this committee was appointed, consisting of Senators Harvey, Mars, and Pruitt and Representatives Bennett, Moorer, and Anderson, who in due course entered upon the performance of their important duties. At a hearing held by the committee there appeared, pursuant to summons, as a witness, one Richard Johnson, and in the progress of his examination he refused to answer certain questions (acting upon the advice of counsel), on the ground that the same might tend to incriminate him. Thereupon, after consideration of the matter, the committee adjudged him in contempt, and he was committed to the custody of its marshal. Whereupon he applied to the Honorable D. Gordon Baker, one of the justices of this Court, for a writ of habeas corpus, which upon being granted and the matter having been fully heard by Mr. Justice Baker, his carefully prepared and well-considered order was handed down on February 21, 1938, adjudging that the petitioner was entitled to his release and that he should be *Page 6 
discharged from custody and allowed to go hence without day. From this order, the committee appeals to this Court.
Pursuant to notice duly given, the respondent on the call of the case objected to the jurisdiction of the Court to hear the appeal, and moved that it be stricken from the docket on the ground that the Joint Resolution on which the commitment was based had expired by limitation and that the powers of the committee had lapsed. Argument on this subject, as well as on the merits of the appeal, was then heard, decision being reserved; and this question of jurisdiction, which lies at the threshold of the case, must, of course, first be determined.
The Joint Resolution under which the committee was created, and which contains the charter of its powers, provides in Section 10 thereof: "The said Committee shall report to the General Assembly not later than February 15th at the next regular session of the Legislature." It is contended that since the committee did not file its final report by February 15th, it is now functus officio. But it will be observed that the Joint Resolution nowhere contains any stipulation, either expressly or by implication, that the failure to file such a report on or before the date mentioned would ipso facto terminate the powers of the committee. Indeed, it is too obvious for extended discussion that this provision of the Resolution in question was directory only, and that the authority of the committee continues unless and until some further action on the part of the General Assembly is taken. 59 C.J., 1078. Especially is this true in view of the fact that the delay in the completion of its activities may be attributed at least in part to the pendency of the instant case. And hence the objection to the jurisdiction of the Court to hear the appeal and the motion to strike the cause from the docket should be overruled; and it is so ordered.
The exceptions of the committee, as appellant, to the order of Mr. Justice Baker raise three principal questions, which will be considered in their order, to wit:
(1) Does the privilege of a witness to decline to give testimony *Page 7 
which might tend to incriminate him apply to an investigation by the legislative committee authorized by the Joint Resolution involved herein?
(2) If so, is the immunity provided in this Resolution sufficient to protect the rights of such a witness?
(3) In this investigation was the witness authorized to refuse to answer the questions propounded to him, on the ground of incrimination, and was he the sole judge as to whether his answer to such questions would have that effect?
The privilege of a witness to decline to give testimony which might have the effect of incriminating him is now guaranteed by the Constitution of this State, but this right was recognized in this jurisdiction as existing in full force and effect as a part of the common law long before it was incorporated as a constitutional provision. It appears to have been first incorporated in the Constitution of 1868, Article 1, § 13, in which the following protective language was used: "No person shall * * * be compelled to accuse or furnish evidence against himself." In our present Constitution, adopted in 1895, it is found in Section 17 of Article 1, where the language used is: "Nor shall [any person]. be compelled in any criminal case to be a witness against himself."
The history of this rule of law, which has come to be recognized as an inalienable right, is very interestingly narrated in the opinion of the Supreme Court of the United States in the case of Brown v. Walker, 161 U.S. 591,16 S.Ct., 644, 647, 40 L.Ed., 819, which shows that the doctrine arose as a protest against the inquisitorial and manifestly unjust methods of interrogating accused persons which had long obtained in the continental system, and until the expulsion of the Stuarts from the British throne in 1688 was not uncommon even in England. The Court says:
"The change in the English criminal procedure in that particular seems to be founded upon no statute and no judicial opinion, but upon a general and silent acquiescence of the Courts in a popular demand. But, however adopted, it has *Page 8 
become firmly imbedded in English, as well as in American, jurisprudence. So deeply did the iniquities of the ancient system impress themselves upon the minds of the American colonists that the states, with one accord, made a denial of the right to question an accused person a part of their fundamental law, so that a maxim, which in England was a mere rule of evidence, became clothed in this country with the impregnability of a constitutional enactment."
It will be recalled that the Federal Constitution as originally adopted did not contain what is generally referred to as the bill of rights, the theory apparently being that it was not necessary that it should be incorporated, but amendments were soon adopted to include the same, and a part of the Fifth Amendment is "nor shall [any person] be compelled in any criminal case to be a witness against himself." Of course, the Constitution of the United States is not involved in the case at bar, but it is interesting to observe that the quoted provision is identical with the clause on that subject contained in our present State Constitution.
It was suggested in argument that in view of the proposals considered by the Constitutional Convention of 1895, and the fact that the language of the Constitution of 1868 on this subject was not adopted, the present constitutional provision is more limited in its scope. But we do not think that it is justly subject to this construction. Indeed, in our view the effect of the present constitutional provision is practically the same as that of the Constitution of 1868, and was probably adopted because of its conformity to the language of the amendment to the Federal Constitution.
Manifestly these constitutional provisions are substantially declaratory of the common law, and it is obvious that if the privilege were limited to a criminal prosecution in which the witness was the defendant, it would fail entirely of its fundamental purpose. Hence it is uniformly held that the privilege is one which may be invoked in any legal investigation, whether judicial or quasi-judicial; *Page 9 
that is to say, it applies to examinations before any tribunal or other body that has power to subpoena and compel the attendance of witnesses. In this connection, the powers of the legislative committee involved herein as to this matter will be found in Section 6 of the Joint Resolution, which is as follows:
"The Committee is hereby authorized and empowered to call before it by summons or notice, in such form as the Committee may adopt, and to be served by the Marshal of said Committee, or such other officer as the Committee may designate, such person or persons as the Committee may deem proper, and require such person or persons to answer, under oath, any and all questions that the Committee may deem relevant, and may propound to him or them; and upon the failure or refusal of such person or persons to obey such summons or notice, or to answer such question or questions, such person or persons shall be deemed to be in contempt of the authority of said Committee and may be imprisoned upon the order of said Committee in the common jail of any county, to be there held until he or they shall comply with the order of the said Committee. All testimony given before said Committee shall be privileged, and no testimony given by any witness before said Committee shall be used as evidence in any criminal proceeding against him in any Court, except in a prosecution for perjury committed in giving such testimony, but an official paper or record produced by him is not within the said privilege. No witness shall be privileged to refuse to testify to any fact, or to produce any paper, or document, respecting which he shall be examined by said Committee, upon the ground that his testimony to such fact or production of such paper or document may tend to disgrace him or otherwise render him infamous."
In view of the plenary powers conferred on this committee in the performance of its official duties, it inevitably follows that the privilege intended to guarantee a witness against self-incriminating evidence applies fully *Page 10 
to a hearing before such a tribunal. Ex parte Parker, 74 S.C. 466,55 S.E., 122, 125, 114 Am. St., 1011, 7 Ann. Cas., 874; State v. Griffin, 129 S.C. 200, 124 S.E., 81, 82, 35 A.L.R., 1227; 28 R.C.L., 425.
The opinion in the case of ex parte Parker, supra, was rendered by Mr. Justice Woods and relates to the powers of a committee of the Legislature authorized to investigate the affairs of the State Dispensary, and while the Court there held that the committee might require an answer to any question it deemed relevant to the investigation, the discretion of the committee was, of course, subject to the limitation that a witness could not be compelled to answer questions "when such compulsion would be in derogation of a constitutional right."
In the case of State v. Griffin, supra, in which the opinion was delivered by Mr. Justice Cothran, it is laid down that the privilege shall be "held to cover testimonial compulsion under any circumstances."
Mr. Justice Baker in his order herein quotes somewhat at length from this opinion, and rightly says, in substance, that while these observations of Mr. Justice Cothran were not necessary to the decision of that case, they doubtless represent the considered judgment of our Supreme Court to the effect that this provision of the State Constitution should be construed in conformity with the declaration of the Supreme Court of the United States, as to the like federal constitutional provision, as follows, to wit: "The object was to insure that a person should not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he himself had committed a crime."Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct., 195,198, 35 L.Ed., 1110.
In the case of the State ex rel. Attorney General Lyon v.Riddock Byrnes, 78 S.C. 286, 58 S.E., 803, the Attorney General filed a petition alleging that the respondents, Riddock Byrnes, were maintaining a statutory nuisance at the Isle of Palms, a hotel and pleasure resort near the *Page 11 
City of Charleston, in that they were maintaining "a place for people to resort for the purpose of drinking alcoholic liquors and beverages," etc., and upon this petition a rule was issued by Mr. Justice Gary requiring the respondents to show cause why they should not be enjoined from continuing such a nuisance. In response to this rule, the respondents appeared specially and alleged that they should not be required to make a sworn answer to the petition, because the effect of being so compelled to plead would deprive them of their constitutional privilege. Upon the hearing, an administrative order was passed by the Court to the effect that it having been ordered that the respondents should answer to the rule on the merits, and counsel having stated to the Court that under advice of counsel respondents would not answer, a permanent injunction against the alleged nuisance should be issued by the Court, and it was so ordered.
As already stated, the order was administrative, and there was no discussion of any legal questions whatever. The decision in this case obviously cannot be construed to qualify the constitutional right of a witness to refuse to give testimony which might tend to incriminate him. If the Court had there ruled the respondents in contempt for failing to make answer to the merits under oath, then the action of the Court might lend some color to the construction placed by the committee on this case, but such, of course, was not the fact, there being no suggestion in the order that the defendants were in contempt. Hence, Mr. Justice Baker was correct in his view that the case is not in point or applicable to the matters under consideration in the case at bar.
The language used by the General Assembly in the Joint Resolution indicates very clearly that there was distinct recognition of the fact that testimony given before the committee would come within the purview of the constitutional privilege, and hence some provision relating to immunity was therein contained. And this brings us to the consideration of the second question involved, that is to say, is this *Page 12 
immunity sufficient to protect the constitutional rights of a witness?
The exact language of the immunity is: "All testimony given before said Committee shall be privileged, and no testimony given by any witness before said Committee shall be used as evidence in any criminal proceeding against him in any Court, except in a prosecution for perjury committed in giving such testimony, but an official paper or record produced by him is not within the said privilege."
It is contended that these words of immunity are quite ample, and that they are co-extensive with the guarantee contained in Article 1, § 17, of the Constitution. But let us analyze them and see if this contention is sound. Of course, under the language of the Joint Resolution, no such testimony could "be used as evidence in any criminal proceeding" against the witness, but such testimony might readily supply information to officers of the law which would enable them to make out a case against the witness, without reading or referring, directly or indirectly, to the same as evidence in any criminal proceeding against him in any Court. In other words, the testimony may disclose such details and sources of information as will supply other means of conviction. Hence, aside from authority, it would appear that the amnesty given is insufficient.
The Supreme Court of the United States gave careful consideration to the whole matter in the case of Counselmanv. Hitchcock, 142 U.S. 547, 12 S.Ct., 195, 206,35 L.Ed., 1110, and in a very able and thorough opinion held that the appellant was entitled to claim the privilege to refuse to answer, although the statutory amnesty involved therein was much broader and more comprehensive than that contained in the resolution before us, upon the ground that it would not "afford absolute immunity against future prosecution for the offense to which the question relates."
It is unnecessary to say that this decision of the Supreme Court of the United States is not binding on us. But the views of that tribunal, especially as to *Page 13 
fundamental constitutional rights, are, of course highly persuasive, because of their exalted source; and in this instance the reasoning of the Court may stand on its own inherent merits; and it will be observed that this case was cited with approval in the opinion in our case of State v. Griffin, supra.
Mr. Justice Baker calls attention to the significant circumstance that the Counselman case was approved by the New York Court of Appeals in the case of Doyle v. Hofstader,257 N.Y., 244, 177 N.E., 489, 491, 87 A.L.R., 418, in which the opinion of the Court was delivered by Judge Cardozo, now a highly esteemed Associate Justice of the United States Supreme Court. This case is of peculiar interest because it relates to an investigation conducted by a legislative committee, and it was there held that the immunity provisions were insufficient because they did not grant absolute amnesty from prosecution, except as to one particular crime, the statement of the Court being:
"The immunity is not adequate if it does no more than assure him that the testimony coming from his lips will not be read in evidence against him upon a criminal prosecution. The clues thereby developed may still supply the links whereby a chain of guilt can be forged from the testimony of others. To force disclosure from unwilling lips, the immunity must be so broad that the risk of prosecution is ended altogether."
Our considered judgment is that while, of course, it was within the power of the General Assembly to provide complete immunity by exempting a witness from any prosecution on account of any transaction to which he may testify, the language of the joint resolution failed to do so, and that the conclusion of Mr. Justice Baker to the effect that the words of immunity are insufficient is correct. If, however, the immunity provisions provided by statute in any case are valid and sufficient to exempt the witness as above suggested from any prosecution on account of any transaction to which he may testify, then the examining body or the trial Judge, as the case may be, has power to *Page 14 
require him to answer or be subject to attachment for contempt.
There remains for consideration the third question involved, and that is whether the witness was authorized to refuse to answer the question propounded on the ground of incrimination, and was he the sole judge as to whether his answers would have that effect? At first blush it may seem somewhat surprising that in view of the importance of the matter under discussion it has come before the Court on so few occasions, but upon reflection it will appear that in the very nature of things the necessity for exercising the privilege would not often arise. And fortunately we have the benefit of some early and illuminating decisions. In the case of the State v. Edwards, 2 Nott McC., 13, 10 Am. Dec., 557, decided in 1819, the opinion of the Court was delivered by Mr. Justice Colcock in which he says:
"I presume no rule, on the subject of evidence, is better established than that a witness shall not be bound to criminate himself. The only difficulty arises in the application of the rule. It must be admitted, that if the question has a tendency to criminate the witness, according to the rule, he is not bound to answer. But, it is said, the Court should decide this point, as to some questions. It is utterly impossible, that the Court can decide without possessing a full and complete knowledge of all the facts which it may be important for the witness to conceal; therefore something must necessarily be left to the witness; and we have the same security for a knowledge of the fact that he may be implicated by the answer, that we have for the knowledge of any other fact.
"It was urged, that an ignorant man might not be able to decide. The Court will always so instruct a witness as to enable him, if he possess any understanding, to determine whether he may be jeopardized by the answer; and if the answer may form one link, in a chain of testimony, against him, he is not bound to answer."
It was there argued that this doctrine would be calculated to protect reluctant witnesses generally, but it was pointed *Page 15 
out by the Court, "that if a witness swear he may be implicated in the guilt of the accused if he answer, and this afterwards appear to be false, he would be liable to an indictment for perjury."
The question again came before our Court in the case ofPoole v. Perritt, 1 Speers, 128, in which the Court, following the case of State v. Edwards, says:
"In the case of United States v. Burr, Ch. Justice Marshall [Fed. Cas. No. 14,692e] (Robertson's Rep. of Burr's Trial, 245) says: `The witness must judge,' etc.; `and if he say on oath that he cannot answer, without accusing himself, he cannot be compelled to answer.' The reasons for such decisions are intelligible. No man is compelled to criminate himself; and, by the same rule, he cannot be required to subject himself to a charge of perjury, by answering in the negative. The confession or negation would be compelled, by a species of duress, by authority, to inculpate himself, one way or the other. The law does, then, act wisely in leaving it to the witness himself, under his own consciousness (with the instruction of the Court, when necessary), to decide whether his answer will tend or may be used to criminate himself; and his decision is upon oath, and at the peril of perjury. It equally follows, that if he were obliged to give any guide or clue to his own guilt, his safety would be in danger, and the rule broken. Its practical protection of the witness depends, therefore, upon the first step."
In the much later case of State v. Butler, 47 S.C. 25,24 S.E., 991, the Court says:
"The first objection to the request of defendants' counsel is that it would make the presiding judge assume that an affirmative answer by the state's witnesses would criminate them, whereas the witnesses themselves have the right to decide as to the effect of their answer. State v. Edwards, 2 Nott. McC., 13 [10 Am. Dec., 557]. But, waiving this objection, the right to refuse to answer a question that would criminate him is personal to the witness, and cannot be interposed by the defendants' counsel." *Page 16 
Of course, the case last cited is not directly in point, but it does recognize the authority of State v. Edwards, supra.
In the case of Poole v. Perritt, supra, reference is made to the trial of Aaron Burr, certainly a cause celebre, in which the great Chief Justice Marshall ruled as follows:
"When a question is propounded, it belongs to the Court to consider and decide whether any direct answer to it can implicate the witness. If this be decided in the negative, then he may answer it without violating the privilege which is secured to him by law. If a direct answer to it may criminate himself, then he must be the sole judge what his answer would be. The Court cannot participate with him in this judgment, because they cannot decide on the effect of his answer without knowing what it would be; and a disclosure of that fact to the judges would strip him of the privileges which the law allows, and which he claims. It follows necessarily then, from this state of things that if the question be of such a description that an answer to it may or may not criminate the witness, according to the purport of that answer it must rest with himself, who alone can tell what it would be, to answer the question or not. If, in such a case, he say, upon his oath, that his answer would criminate himself, the Court can demand no other testimony of the fact. If the declaration be untrue, it is in conscience and in law as much a perjury as if he had declared any other untruth upon his oath; as it is one of those cases in which the rule of law must be abandoned, or the oath of the witness be received. * * * Many links frequently compose that chain of testimony which is necessary to convict any individual of a crime. It appears to the Court to be the true sense of the rule that no witness is compellable to furnish any one of them against himself. It is certainly not only a possible, but a probable, case, that a witness, by disclosing a single fact, may complete the testimony against himself, and to every effectual purpose accuse himself as entirely as he would by stating every circumstance which would be required for his conviction. That fact of itself might be unavailing; but all *Page 17 
other facts without it might be insufficient. While that remains concealed within his own bosom he is safe; but draw it from thence, and he is exposed to a prosecution. The rule which declares that no man is compelled to accuse himself would most obviously be infringed by compelling a witness to disclose a fact of this description. What testimony may be possessed, or is attainable, against any individual the Court can never know. It would seem, then, that the Court ought never to compel a witness to give an answer which discloses a fact that might form a necessary or essential part of a crime, which is punishable by the laws. In such a case, the witness must himself judge what his answer will be; and if he say, on oath, that he cannot answer without accusing himself, he cannot be compelled to answer." 1 Burr's Trial, 244, 245.
It is stated in 70 C.J., 751, 752 that expressions in the cases as to who is to determine the right to claim the privilege of refusing to answer on the ground that the answer might tend to incriminate the witness are not in harmony, and that although there is authority that the matter is to be determined by the witness himself, under instructions by the Court (citing our South Carolina cases), the modern rule is that the trial Court is first to determine whether in law under all the circumstances the witness should be accorded the privilege, and such determination is a matter within the discretion of the Court. And the view has been taken that if this were not so it would be in the power of every witness to deprive parties of their testimony by a mere colorable pretense that his answer to questions would have a tendency to implicate him in some crime or misdemeanor.
It appears to be generally recognized that perhaps our South Carolina decisions state the rule more strongly in favor of the witness than any others. But we find no occasion to overrule these cases, or to abrogate the liberal policy there laid down for the protection of a witness. However, it must be borne in mind that they were not dealing with, nor are we here dealing with, questions to which it would obviously *Page 18 
be arbitrary and unreasonable to say that any answer would tend to incriminate. A careful examination of these decisions and the facts upon which they were based will clearly show that they do not exclude the application of the rule of reason; nor are they inconsistent with the statement of Chief Justice Marshall that the question must be of such a description that an answer to it may or may not incriminate the witness according to the purport of the answer, because otherwise the examining body or the trial Judge should, of course, require him to answer. Indeed, the decision of the illustrious Chief Justice is cited with obvious approval in the case of Poole v. Perritt, supra.
And even if the doctrine were stated in a more qualified way than is above indicated, we find upon a thorough consideration of the questions propounded to the respondent, Richard Johnson, by the committee, as set forth in the sixth exception, which should be reported, that they are certainly not such questions as would have authorized the committee to conclude that no answer thereto could reasonably have the effect of incriminating or tending to incriminate the witness, or at least of disclosing some information which might form a link in a chain of evidence against him. Hence it follows that the respondent was justified in exercising his constitutional right to refuse to answer.
It appears from the order of Mr. Justice Baker that he did not understand it to be the position of the committee that answering the questions might not tend to incriminate the witness, and hence he did not deem it necessary that his order should be burdened with the questions in detail, stating however, that it appeared to be the settled law of the State that the witness must decide if a truthful answer to a question might tend to incriminate him; citing State v. Edwards, 2 Nott McC., 13, 10 Am. Dec., 557. The committee conceives that Mr. Justice Baker misunderstood its contention, but this is immaterial as we have considered the point fully and treated it as if directly raised in the original hearing.
Manifestly, the joint legislative committee in the action *Page 19 
taken by it was merely seeking to perform with efficiency and fidelity the arduous public duties devolved upon it, and it is, therefore, in nowise justly subject to any adverse criticism; and to the extent its investigations may be hindered or impeded by the right of any witness to refuse to testify on the ground of possible incrimination this is due to the limited immunity contained in the Joint Resolution creating the committee. The legislative discretion on this point is, of course, not a matter for the Courts.
We have given very careful consideration to all of the exceptions and they are hereby overruled, and the order of Mr. Justice Baker is affirmed.
MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE PHILIP H. STOLL concur.
MR. JUSTICE BAKER disqualified.
MR. JUSTICE CARTER did not participate on account of illness.