422 P.2d 659

**In re Contempt of Neuman C. PETTY,
Appellant.**

**No. 10690.**

. Supreme Court of Utah.

Jan. 19, 1967.

Lee W. Hobbs, Salt Lake City, for appellant.

Phil L. Hansen, Atty. Gen., Ronald N. Boyce, Salt Lake City, for respondent.

ELLETT, Justice.

The appellant appeals from a sentence imposed for alleged contempt of court committed when he refused to testify as a witness in a case wherein another person was being prosecuted for the crime of perjury in the first degree. In a separate case he was jointly charged with the defendant and others with the crime of conspiracy to commit ten alleged crimes consisting of one hundred and forty-three overt acts.

At the perjury trial the appellant was called by the State and was sworn to testify truly and fully. He gave his name and address and on advice of counsel refused

to answer any further questions. It was known that he was the employer of the defendant in the perjury case, and the issue therein was as to whether that defendant had embezzled some money and subsequently paid it back.

Article I, Section 12, of the Constitution of Utah states: " * * * The accused shall not be compelled to give evidence against himself * * *." This privilege is implemented in our Code by Section 78–4–9, U.C.A.1953.

Section 76–28–58, U.C.A.1953, provides as follows:

> Every person who, having knowledge of the actual commission of a crime, takes money or property of another or any gratuity or reward, or any engagement or promise thereof, upon any agreement or understanding to compound or conceal such crime, or to abstain from any prosecution thereof, or to withhold any evidence thereof, except in the cases provided for by law in which crimes may be compromised by leave of court, is punishable * * *.

Appellant argues that if he knew the crime of embezzlement had been committed and had agreed not to prosecute if the money was repaid, he would be subject to prosecution. Certainly he should not be compelled to testify to matters which might tend to implicate him in any crime growing out of any one or more of the one hundred and forty-three overt acts charged against him in the conspiracy case.

The district attorney and the court both recognized this possibility, and the district attorney moved to dismiss the conspiracy case in its entirety as to the appellant with prejudice and to grant immunity to the appellant from any and all offenses growing out of his testimony, and the court granted the motion.

The first question to be dealt with is whether or not the district attorney had the power to grant immunity to the witness. In the case of Apodaca v. Viramontes, 53 N.Mex. 514, 212 P.2d 425, 13 A.L.R.2d 1427, the court said:

> We have been unable to find decisions of the courts of any state upholding the power of the prosecuting officer and the court, either or both, to grant immunity to the witness in the absence of express constitutional or statutory authority, except certain decisions from the State of Texas.

In Utah there is neither constitutional nor statutory authority for the granting of such immunity by the court or the district attorney.

Several sections of our 1953 Code give immunity to the appellant from any prosecution under the conspiracy charge, viz.:

> 77–51–4. Motion of district attorney. The court may, either of its own motion or upon the application of the district at-

torney, in furtherance of justice order an action, information or indictment to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes.

77–51–6. Dismissal a bar, except in felony cases. An order for the dismissal of an action as provided in this chapter shall be a bar to any other prosecution for the same offense, if it is a misdemeanor; but shall not be a bar, if the offense is a felony.

■ Since the crime of conspiracy charged was an indictable misdemeanor (76–12–1), it follows that a dismissal would prevent any further prosecution for that particular charge. Furthermore, Sections 77–31–7 and 9 give any defendant an immunity from further prosecution for the particular crime when one jointly charged with another is dismissed from the case *so he may be a witness for the State.* Those sections read as follows:

77–31–7. Discharging one of several defendants—To testify for state. When two or more persons are included in the same charge the court may, at any time before the defendants have gone into their defense, on the application of the attorney for the state, direct any defendant to be discharged, that he may be a witness for the state.

77–31–9. Discharge a bar. The order mentioned in the two next preceding sec-

tions shall be an acquittal of the defendant discharged, and shall be a bar to another prosecution for the same offense.

These two sections will protect him from further prosecution even in cases of felony when the purpose is to have the defendant testify. We see no conflict between the quoted provisions as cited above.

■ While a dismissal under any of those statutes would be a bar to further prosecution of the defendant for the particular crime of conspiracy as charged, it would not give any immunity to him for any other crime which he might reveal by answering questions propounded to him. He could not claim the right to remain silent since he no longer was a defendant in the case, but he had all of the rights and immunities of any other witness and needed not answer a question if it tended to incriminate him for any other crime.

The second question presented is whether or not a witness is to be the judge of whether his testimony will tend to incriminate him or whether the court can determine that matter without requiring the defendant to reveal all of the facts which prompt him to believe he would be incriminated.

South Carolina dealt with this question as early as 1819 in the case of State v. Edwards, 2 Nott & McC. 13, where it was said:

I presume no rule on the subject of evidence is better established than that a witness shall not be bound to criminate himself. The only difficulty arises in the application of the rule. It must be admitted that if the question has a tendency to criminate the witness, according to the rule he is not bound to answer. But it is said the Court should decide this point, as to some questions. It is utterly impossible that the Court can decide without possessing a full and complete knowledge of all the facts which it may be important for the witness to conceal. Therefore, something must necessarily be left to the witness; and we have the same security for a knowledge of the fact, that he may be implicated by the answer, that we have for the knowledge of any other fact. It was urged that an ignorant man might not be able to decide. The court will always so instruct a witness as to enable him, if he possesses any understanding, to determine whether he may be jeopardized by the answer; and if the answer may form one link in a chain of testimony against him, he is not bound to answer.

The rule set out in the South Carolina case is more favorable to the defendant than that of most states. The better holding seems to be that set out by Justice Cardozo in Doyle v. Hofstader, 257 N.Y. 244, 177 N.E. 489, 494, 87 A.L.R. 418:

It is enough, to wake the privilege into life, that there is a reasonable possibility of prosecution and that the testimony, though falling short of proving the crime in its entirety, will prove some part or feature of it, will tend to a conviction when combined with proof of other circumstances which others may supply.

In Ex parte Senior, 37 Fla. 1, 19 So. 652, 32 L.R.A. 133, the court spoke of the privilege as follows:

The privilege must be claimed in good faith, and not as a shield to defeat justice. It was held in Reg. v. Boyes, 1 Best & S. 311, that, to entitle a witness to the privilege of silence, "the court must see from the circumstances of the case, and the nature of the evidence which he is called to give, that there is reasonable ground to apprehend danger to the witness from his being compelled to answer. Moreover, the danger to be apprehended must be real and appreciable, with reference to the ordinary operations of law in the ordinary course of things." * * * While the witness must judge of the effect of his answer, and should not be required to explain how it will criminate him, yet the court must determine, under all the circumstances of the case, whether such will be its tendency from the question asked; and where, from the nature of the investigation and the character of the testi-

mony sought, it reasonably appears that the answer may criminate, or tend to criminate, the witness has the right to claim his privilege, and is not bound to answer.

■■ Of course, in dealing with questions to which it would obviously be arbitrary and unreasonable to say that any answer would tend to incriminate the witness, the court would be justified in substituting his judgment for that of the witness and in requiring the witness to answer. If the court has any doubt as to whether or not the witness might be incriminated by answering a question, he should not hold the witness in contempt until he has first given him an opportunity to explain by such noncriminatory evidence as he may have why he claims the privilege; and in the case of Sandrelli v. Commonwealth, 342 Mass. 129, 172 N.E.2d 449, 88 A.L.R.2d 450, the trial court refused evidence contained in newspaper articles and the proffered statement of the district attorney regarding those suspected of crime, and the appellate court reversed the holding of contempt by reason of the improper exclusion of these matters.

■ One further point was raised in the State's brief but not urged in argument, and that was the claim that because of the testimony of the district attorney relating to knowledge which he had of facts in the case being tried which knowledge was gained partly by conversation with appellant, that the appellant waived his privilege not to testify. Neither the record nor the law supports such a contention, and so it is not discussed further.

■ The Attorney General orally admitted that the appellant in this matter had a privilege not to answer the questions propounded to him, and with this admission we are in agreement.

The order holding appellant in contempt is reversed and the matter remanded to the trial court with directions to quash the commitment and discharge the appellant.

CROCKETT, C. J., and CALLISTER, TUCKETT, and HENRIOD, JJ., concur.