# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Travis Latrell Lawrence, Appellant.

Appellate Case No. 2018-000989

———————————

Appeal From Dorchester County
Maite Murphy, Circuit Court Judge

———————————

Opinion No. 5863
Submitted May 3, 2021 – Filed October 6, 2021

———————————

**AFFIRMED**

———————————

Appellate Defender Susan Barber Hackett, of Columbia,
for Appellant.

Attorney General Alan McCrory Wilson, Assistant
Attorney General William Frederick Schumacher, IV,
both of Columbia, and Solicitor David Michael Pascoe,
Jr., of Orangeburg, all for Respondent.

———————————

**HILL, J.:** A jury convicted Travis Latrell Lawrence of attempted murder. He now appeals, raising two grounds. The first is that the trial court erred in ruling his co-defendant who was awaiting trial, Terrell Bennett, was protected by the right against self-incrimination from being forced to testify at Lawrence's trial. The second error Lawrence alleges is the admission of evidence that Bennett was the subject of a traffic stop three months before the attempted murder occurred. We see

no error in the trial court's handling of the self-incrimination issue, but it was error, albeit harmless, to admit the traffic stop evidence. We therefore affirm.

## I. FACTS

The victim, Clayton Baxter, testified he was at home when Bennett called asking to borrow money. Baxter told Bennett to come over. Baxter considered Bennett—who called him "Unc"—to be his nephew. They had known each other over twenty years, as Baxter's sister raised Bennett. When Bennett arrived outside Baxter's house, he called Baxter and asked if anyone else was inside (Baxter's pregnant friend was asleep upstairs). When Baxter opened the door to let Bennett in, he noticed someone walking behind Bennett and asked, "Who's that behind you?" The answer was Lawrence, who emerged pointing a .38 revolver at Baxter. Baxter testified he knew Lawrence, having met him through Bennett some six or seven times. Lawrence told Baxter to "give me the money," Bennett closed the door, and the three moved towards the dining room table. Baxter, who is six foot seven inches tall and weighs three hundred pounds, noticed Lawrence lower the revolver. Baxter grabbed Lawrence and slammed him on the table. The fracas soon involved all three men, and at some point, the gun fired, sending a bullet towards the upstairs bedroom, fortunately not striking anyone. Lawrence then went to the kitchen and found a knife, which he used to slice Baxter across the face and stab him in the head, back, and shoulder. Lawrence and Bennett then departed, taking the knife, gun, and seventy dollars cash. Baxter called 911.

Baxter testified he told the responding officers Lawrence and Bennett had attacked him. While cross-examining Baxter, Lawrence tried to establish that Baxter initially identified Bennett as the stabber. Lawrence also insinuated that—due to Baxter's previous drug conviction and the presence of marijuana, scales, and cash in his home—the entire episode had erupted over a botched drug deal. Baxter denied naming Bennett as the stabber, contradicting some evidence from the officers' body cameras, including a clip played to the jury where Baxter stated, "'Rell [Terrell] did it" and "Trav" was with him and that Bennett drove a gold Cadillac. The semantic quibbling on cross continued over what the definition of "it" is, with Baxter clarifying that Lawrence was the one who stabbed him, Bennett had also held the gun on him at one point during the melee, and both Lawrence and Bennett were involved in the attack and robbery. Baxter also picked Lawrence out from a photo array police showed him shortly after the crime.

Over Lawrence's relevance objection, the trial court allowed the State to call a patrolman who testified he had pulled Bennett over for a "simple traffic stop" three months before the attack on Baxter, and Bennett was driving a gold Cadillac Deville.

In his case, Lawrence called one of the responding officers to testify his incident report reflected Baxter stated he was stabbed by "'Rell." Lawrence also subpoenaed Bennett to testify, but Bennett invoked his right against self-incrimination. After hearing *in camera* testimony *ex parte*, the trial court upheld Bennett's right, finding his proposed testimony incriminating. The jury found Lawrence guilty of attempted murder but not guilty of armed robbery and possession of a firearm by a person convicted of a crime of violence.

## II. STANDARD OF REVIEW

As to the trial court's ruling on the self-incrimination issue, we have been unable to find any previous South Carolina case establishing a specific standard of review. Our default is the benchmark for criminal cases: we review only errors of law and are bound by the factual findings of the trial court unless they are clearly erroneous. *See State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 200 (2006). We may only reverse the trial court's evidentiary ruling admitting the traffic stop if it amounts to an abuse of discretion, meaning it is unsupported by the law or the record. *See State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006).

## III. DISCUSSION

### A. Co-defendant Bennett's Right Against Self-incrimination

Lawrence claims the trial court erred in finding Bennett demonstrated an objectively reasonable fear of incrimination. We disagree, as the trial court's ruling was well supported by the record and correctly applied the law.

Lawrence subpoenaed Bennett to testify because he believed Bennett could help him prove Baxter initiated the fight and, therefore, Lawrence had acted in self-defense. At the second day of trial, after the State had presented Baxter and other witnesses, Bennett appeared and invoked his right against self-incrimination. The trial court conducted a hearing on the record *in camera* with only Bennett, his lawyer, and essential court personnel present. The trial court also took *in camera* testimony from a police investigator who was present on several occasions when Bennett was interviewed. The trial court ruled Bennett would face a "hazard of incrimination" if compelled to testify and, therefore, had the right not to testify.

The right against self-incrimination is enshrined in both the South Carolina and the United States Constitutions. *See* U.S. Const. amend. V; S.C. Const. Art I, §12. Our Supreme Court has assumed the analysis of our state constitutional right is in lockstep with federal precedent. *Grosshuesch v. Cramer*, 377 S.C. 12, 23 n.2, 659 S.E.2d 112, 118 n.2 (2008). The right, which is also ensured by statute, S.C. Code Ann. § 19-11-80 (2014), "protects the innocent as well as the guilty." *Ohio v. Reiner*, 532 U.S. 17, 18 (2001). It protects the innocent because an innocent witness' truthful answers may, in ambiguous circumstances and when combined with other evidence, furnish the government with incriminating proof "from the speaker's own mouth." *Id*. at 21; *see* Akhil Amar, *The Bill of Rights* 116 (1998) (Fifth Amendment protects "the innocent but inarticulate defendant, who might be made to look guilty if subject to crafty questions from a trained inquisitor"). It protects a person from being forced to testify against himself, a basic liberty that embodies many of our country's values and aspirations and is a monument to man's struggle to greater dignity and freedom. *Michigan v. Tucker*, 417 U.S. 433, 444 (1974); *see also State v. Thrift*, 312 S.C. 282, 296, 440 S.E.2d 341, 349 (1994). The framers placed the guarantee in the federal bill of rights, constitutionalizing a common law right that had developed in England over the centuries and was designed to shield citizens from the debasing horrors of forced confessions obtained by such infamous tyrannies as the Star Chamber and the Spanish Inquisition (which no one expected). *See generally Tucker*, 417 U.S. at 440; Leonard Levy, *Origins of the Fifth Amendment* (1968).

"[N]o rule, on the subject of evidence, is better established then that a witness shall not be bound to criminate himself. The only difficulty arises in the application of the rule." *State v. Edwards*, 2 Nott & McC. 13, 14, 11 S.C.L. 13, 14 (Const. Ct. App. S.C. 1819). When a criminal defendant calls a witness who invokes the right against self-incrimination, competing interests of justice collide. A criminal defendant's right to present evidence "has constitutional dimensions," drawing from the Sixth Amendment rights to confrontation and compulsory process. *United States v. Nixon*, 418 U.S. 683, 711 (1974); *Washington v. Texas*, 388 U.S. 14, 19 (1967). Layered upon this is the common law command that, in general, parties have a right to "every man's evidence." *See Trammel v. United States*, 445 U.S. 40, 50 (1980) (quoting *United States v. Bryan*, 339 U.S. 323, 331 (1950)). When a witness stakes his constitutional right not to testify against these weighty interests, the trial court must strike the balance, at times a tricky task. The trial court must be mindful that the right against self-incrimination is to be broadly drawn, *see Hoffman v. United States*, 341 U.S. 479, 486 (1951), and the defendant's right to confrontation and to present evidence must yield to the opposing Fifth Amendment right as long as the witness has a legitimate fear of possible incrimination. *See, e.g.*, *United States v. Khan*, 728 F.2d 676, 678 (5th Cir. 1984).

The task is made more difficult by the lack of guidance as to the procedure the trial court should use. *See United States v. Dalton*, 918 F.3d 1117, 1130 (10th Cir. 2019) (noting no standard procedure exists). While a trial court cannot, except in exceptional circumstances, uphold a witness' blanket assertion of a self-incrimination claim, it likewise cannot interrogate the witness to an extent that would expose the very incriminating evidence the right is designed to safeguard. The proceeding, which the trial court here held on the record, *in camera*, and *ex parte*, should be designed to permit the witness or his lawyer to explain in general terms his legitimate fear of incrimination, after which the trial court may probe further, by examination if necessary, to determine if the witness' fear of prosecution is genuine, objectively reasonable, and meets the low threshold of *Hoffman* and *Grosshuesch*. We are not presented with a challenge to the procedure the trial court used but note *in camera* and *ex parte* self-incrimination hearings present many pros and cons. *See United States v. Melchor Moreno*, 536 F.2d 1042, 1047 n.7 (5th Cir. 1976) (cataloging advantages and disadvantages of *in camera, ex parte* inquiry of a witness' Fifth Amendment claim).

A witness' claim to his right against self-incrimination must be upheld unless it is "perfectly clear" the testimony sought has no possible tendency to incriminate. *Malloy v. Hogan*, 378 U.S. 1, 12 (1964). But a "witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination." *Hoffman*, 341 U.S. at 486. Instead, the court makes the call, and it must uphold the privilege as long as it is "evident from the implications of the question, in the setting in which it is asked that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id*. at 486–87. In making this assessment, the trial court considers the facts and peculiarities of the case and uses its wisdom and practical experience to imagine how the witness' own words might ensnare him in the teeth of a criminal law.

The right protects answers that are incriminating on their face, as well as any that might form a "link in the chain" needed to prosecute the witness for a crime. *Id*. at 486. Accordingly, the privilege "protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 445 (1972). The hazard of prosecution need not be certain, nor even likely; the possibility of prosecution is enough. *First Union Nat'l Bank v. First Citizens Bank & Trust Co. of S.C.*, 346 S.C. 462, 467, 551 S.E.2d 301, 303 (Ct. App. 2001); *United States v. Johnson*, 488 F.2d 1206, 1209–10 (1st Cir. 1973). Because of the

fundamental importance of the right, a trial court may not be unduly skeptical of the witness' fear, for it may be the witness cannot explain his need for the right without surrendering it. *Hoffman*, 341 U.S. at 486–87. At the same time, the court is not bound to uphold the right if the witness' danger of incrimination is "imaginary and unsubstantial." *Reiner*, 532 U.S. at 21 (quoting *Mason v. United States*, 244 U.S. 362, 366 (1917)). In the past, many courts required assertion of the privilege on a "question by question" basis, but a more enlightened view is that when the hazard is openly apparent, the witness "need not be tested by the rote recitation of questions that have obvious answers of which the judge is already aware." *United States v. Stewart*, 907 F.3d 677, 685 (2d. Cir. 2018).

Though the trial court's examination of Bennett may have been too specific (and involved unnecessary inquiry of the police witness), we affirm the upholding of Bennett's right to not testify. The hazard of incrimination was openly apparent. Bennett was not facing just a risk of prosecution; he was already being prosecuted as Lawrence's indicted co-defendant. Almost anything Bennett could utter about the incident would likely be used against him at his upcoming trial. The trial court well understood the situation and also knew Bennett's proposed testimony was at odds with what the State was contending was the truth. *See United States v. Mares*, 402 F.3d 511, 514–15 (5th Cir. 2005) (affirming trial court's refusal to allow defendant to examine co-perpetrator outside presence of jury and rule on co-perpetrator's Fifth Amendment right on a question by question basis; by the time issue surfaced at trial, trial court had heard enough evidence of co-perpetrator's actions exposing him to robbery and other charges to understand the implications of the proposed testimony and the corresponding scope of co-perpetrator's Fifth Amendment privilege).

B. Admission of the Pre-trial Traffic Stop of Co-defendant Bennett

At trial, the State argued the traffic stop evidence was relevant because it corroborated Baxter's identification of Bennett. The trial court agreed, a decision we review for abuse of discretion. Relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE.

To be sure, Baxter testified Bennett drove a gold Cadillac to his house that day, and he told the responding officers Bennett drove a gold Cadillac. But Bennett's identity was not an issue at Lawrence's trial. Nor was the ownership of the gold Cadillac. The only identity of consequence was who stabbed Baxter, a fact the gold Cadillac evidence could not illuminate.

The State maintains the evidence was relevant because it bolstered Baxter's credibility. We must, however, take a rational approach to the impact of this evidence. To call its probative value weak would be a monstrous understatement.

No one disputes Baxter knew Bennett well. They had enjoyed a close relationship for over twenty years and considered each other family. Corroborating Baxter's knowledge of Bennett was not relevant or probative. On the other hand, testimony that Bennett was stopped by police shortly before the attack was at best a waste of time and, at worst, a deliberate attempt by the prosecution to paint Lawrence as someone who consorted with law breakers. We therefore conclude the traffic stop evidence should not have been admitted as its probative value was dwarfed by the dangers of unfair prejudice to Lawrence, confusion of the issues, misleading the jury, and waste of time. Rule 403, SCRE. Although we have little doubt the State presented the traffic stop simply for its spillover prejudicial effect, the evidence was so feckless it is an easy call for us to deem it harmless. *See State v. Tapp*, 398 S.C. 376, 389, 728 S.E.2d 468, 475 (2012) (error is harmless when it appears beyond a reasonable doubt that it did not contribute to the verdict).

We decide this case without oral argument pursuant to Rule 215, SCACR.

**AFFIRMED.**

**WILLIAMS and THOMAS, JJ., concur.**