Jeryl Y. MOLL, on behalf of herself and all others similarly situated, Plaintiffs,

v.

U.S. LIFE TITLE INSURANCE COMPANY OF NEW YORK, Defendant.

No. 85 Civ. 6866 (PKL).

United States District Court, S.D. New York.

Jan. 5, 1987.

Paul K. Rooney, New York City, for plaintiffs.

James N. Benedict, Rogers & Wells, New York City, for defendant.

Robert G. Morvillo, Obermaier, Morvillo & Abramowitz, P.C., New York City, for Ronald M. Kahn.

Joseph M. Burke, Meatto, Russo, Burke & Wallace, New York City, for John Mirabile.

Wayne Gavioli, Savad & Gavioli, Nanuet, N.Y., for John Sellick.

Leon Ellner and Clifford Ellner, Ellner & Ellner, New City, N.Y., for Ellner & Ellner.

Eric B. Levine, New York City, for Micheal H. Reeder and Reeder, Abel & Kossin.

Stuart M. Mitchell, Nyack, N.Y., pro se.

Philip Berg, Spring Valley, N.Y., pro se.

Gerald Molony, New City, N.Y., for James Feeney and James Feeney, P.C.

## MEMORANDUM AND ORDER

JAMES C. FRANCIS IV, United States Magistrate.

This case is a proposed class action lawsuit in which plaintiff Jeryl Y. Moll alleges

that defendant U.S. Life Title Insurance Company of New York ("U.S. Life") has been paying kickbacks to real estate attorneys who steer their clients to U.S. Life for title insurance. According to the plaintiff, such actions violate the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA") and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"). Mrs. Moll's claims are based on an alleged kickback paid to her real estate attorney, James M. Feeney, out of the premium which Mrs. Moll paid to U.S. Life for title insurance on her house. There are several discovery disputes now pending. Plaintiff seeks discovery of the testimony of four non-party attorneys who assert that the Fifth Amendment protects them from testifying and from producing business records, and she has filed a motion to compel the testimony of James M. Feeney, Esq., and the production of papers from Mr. Feeney and his law firm, James M. Feeney, P.C. Plaintiff also requested by letter to the Court that the law firms of Phillip Berg, Esq., John Seleck, Esq., and Ellner and Ellner be required to turn over documents and records requested at their depositions. Defendant U.S. Life has asked the Court to order plaintiff to respond to questions regarding her financial ability to represent the proposed class.

### A. *Fifth Amendment Privilege*

Plaintiff has alleged in her complaint that the attorney non-party witnesses are participants in a kickback scheme with U.S. Life, in violation of RICO and RESPA. The subpoenaed attorneys are, according to plaintiff, "examining counsel" who illegally split title insurance premiums with defendant U.S. Life. RESPA provides both civil and criminal penalties for the types of kickbacks alleged by plaintiff. 12 U.S.C. § 2607(a)–(d).

Although none of the attorneys is a defendant in the instant civil action and no criminal investigation appears to be pending, the constitutional privilege against self-incrimination applies to any proceeding in which testimony is sought, and protects a witness as fully as it protects a party defendant. 8 Wright & Miller, Federal Practice and Procedure, § 2018, at 140.

The Federal Rules of Civil Procedure provide that discovery is available only as to matters "not privileged," and therefore discovery cannot be had as to matters protected by the Fifth Amendment privilege against self-incrimination. Fed.R. Civ.P., Rule 26(b)(1). The amendment protects a witness against giving testimony that would "furnish a link in the chain of evidence needed to prosecute him for a crime." *In Re Grand Jury Subpoena of Flanagan,* 691 F.2d 116, 120 (2d Cir.1982), citing *Hoffman v. United States,* 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). The privilege is available even if the risk of criminal prosecution is remote, and the witness need only show that there is a possibility, and not a likelihood, of prosecution. *Camelot Group, Ltd. v. W.A. Krueger Co.,* 486 F.Supp. 1221 (S.D.N.Y.1980).[1]

Because Mr. Feeney and the other attorneys are alleged to be participants in a kickback scheme and subject to criminal penalties, they are "confronted by substantial and real and not merely trifling or imaginary hazards of incrimination." *See United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 1243 n. 13, 79 L.Ed.2d 552 (1984), citing *Marchetti v. United States,* 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968), and the Fifth Amendment privilege will apply where appropriate.

### 1. *Deposition Testimony*

When a deposition is sought, the availability of the Fifth Amendment privilege does not mean that the witness need not attend the deposition. The proper procedure is for the deponent to attend the deposition, to be sworn under oath, and to answer those questions he can without

---

1. The instant case is distinguishable from *Camelot,* where the possibility of prosecution was merely "fanciful" in that the civil fraud claims against the defendant there were not based upon an analogous criminal statute. *Id.* at 1228–1229.

risking self-incrimination. *Hudson Tire Mart, Inc. v. Aetna Casualty & Surety Co.*, 518 F.2d 671, 674 (2d Cir.1975).[2] The four non-party witnesses, James M. Feeney, Esq., Ronald M. Kahn, Esq., Stuart M. Mitchell, Esq., and John Mirabile, Esq., have appeared for deposition and asserted their Fifth Amendment privilege. They cannot be compelled to testify as to any information which would possibly furnish evidence against them personally in a criminal prosecution under RESPA or RICO. However, the witnesses must cooperate with discovery to the extent of answering questions which would not incriminate them, including general questions regarding their law practice and matters of public record.[3]

## 2. *Production of Documents*

Plaintiff has moved, pursuant to Rule 37 of the Federal Rules of Civil Procedure, to compel the production of documents and records from James M. Feeney, P.C., either through Mr. Feeney, or a representative of the firm. The documents requested include all those relating to plaintiff Moll's real estate closing, U.S. Life, Heritage Abstract Corp., and Timothy F. Miller, a title closer. The records include bills, title records, cancelled checks and relevant IRS forms.

James M. Feeney, Esq. and James M. Feeney, P.C. oppose production of the documents and records based upon the Fifth Amendment protection against self-incriminating testimony. Feeney contends that because he is a sole practitioner, albeit incorporated as a "P.C.", or professional corporation, pursuant to New York Business Corporation Law § 1501, *et seq.* ("N.Y.B.C.L."), he is afforded the Fifth Amendment privilege.

However, the Fifth Amendment does not shield the contents of voluntarily prepared business records. *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 1241, 79 L.Ed.2d 552 (1984). "If the party asserting the Fifth Amendment privilege has voluntarily compiled the document, no compulsion is present and the contents of the document are not privileged." *Id.* at 1242 n. 10. In *Doe*, the Court applied this principle to the incriminating business records of a sole practitioner of real estate law. *Ibid.* Therefore, the contents of the business records of James Feeney are not protected from disclosure.

Nevertheless, the Fifth Amendment privilege may apply to the act of producing a document when the "act of producing evidence in response to a subpoena ... has communicative aspects of its own, wholly aside from the contents of the papers produced." *Fisher v. United States*, 425 U.S. 391, 410, 96 S.Ct. 1569, 1580, 48 L.Ed.2d 39 (1976). Thus if the act of production itself constitutes a compelled authentication of incriminating information, such as verification of the existence or possession of disputed documents, the Fifth Amendment will protect the individual from producing the records. *Andersen v. Maryland*, 427 U.S. 463, 475, 96 S.Ct. 2737, 2745, 49 L.Ed.2d 627 (1976).

In this case, it is not clear from the record whether production of certain papers would in itself incriminate Mr. Feeney personally. But in any event, the Fifth Amendment privilege only extends to the production of *personal* records in the possession of the individual claiming the privilege, *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886) (private business records), and not to records held by corporate representatives, *Wilson v.*

---

**2.** Similarly, a motion to quash a subpoena duces tecum will not be granted unless it is clear that every item requested would be incriminating; instead the witness must bring his records to the deposition and then claim the Fifth Amendment privilege for each specific document. *In re Turner*, 309 F.2d 69 (2d Cir.1962).

**3.** For example, Mr. Feeney inappropriately asserted the privilege at his deposition when he refused to answer questions about how long he had been in practice, whether he was admitted to the Bar in New York and whether he was incorporated as a professional corporation. Plaintiff's Notice of Motion to Compel Production of Documents, Giving of Testimony and For Sanctions, Ex. E.

*United States,* 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911), or to representatives of "collective entities" such as labor unions, *United States v. White,* 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944), and law partnerships, *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). Documents which are held in a representative capacity do not reflect any privacy expectation on the part of the representative, as do personal records, and therefore the Fifth Amendment does not apply. *Id.* at 91–92, 94 S.Ct. at 2184–85.

Thus, the issue presented in Mr. Feeney's case is whether he holds the requested documents in a personal capacity or as a representative of James M. Feeney, P.C. If he holds them as a representative of a "collective entity," defined in *Bellis v. United States* as "an organization which is recognized as an independent entity apart from its individual members," *id.* at 92, 94 S.Ct. at 2185, he may not assert his personal Fifth Amendment privilege on behalf of the entity. *United States v. Doe* 104 S.Ct. at 1240.

In *Doe,* the Supreme Court agreed that the business records held by a sole proprietor may be no different from the individual owner's personal records and in that case the act of producing the documents at issue was privileged. *Id.* at 1242–45. However, the Second Circuit has explicitly refused to extend *Doe* to protect a corporation which is a "one man operation," *In Re Two Grand Jury Subpoenae Duces Tecum,* 769 F.2d 52, 58 (2d Cir.1985), reasoning that "[s]ince 1906 the Supreme Court has regarded the distinction between an individual and a corporation as vitally important in determining the reach of the Fifth Amendment.... The entire *Doe* case is predicated on the fact that the documents at issue are documents of sole proprietorships, not corporate documents." *Ibid.*

James Feeney argues that a professional corporation ("P.C.") organized pursuant to N.Y.B.C.L. § 1501, *et seq.,* is more akin to a sole proprietorship than to a corporation or to the "collective entity" described in *Bel-*

*lis.* In *Bellis,* the Supreme Court held that a three partner law firm had "an established institutional identity independent of its individual partners," based on the organizational structure imposed by state partnership law, and various indicia of the firm's separate, long term existence. *Id.* 417 U.S. at 95–97, 94 S.Ct. at 2186–87. The subpoenaed business records were held by the partner in a representative capacity and could not be protected by an assertion of his personal Fifth Amendment privilege. *Id.* at 98, 94 S.Ct. at 2188. *Bellis* thus extended *United States v. White,* which denied the Fifth Amendment privilege whenever "it is fair to say that the records demanded are the records of the organization rather than those of the individual." *Id.* at 93, 94 S.Ct. at 2185.

 In Mr. Feeney's case the most accurate characterization is that the records belong both to him and the corporate entity. Because he is a sole practitioner, they are not merely partnership property under the state partnership property law. *See Bellis* at 98–99, 94 S.Ct. at 2188–89; *In re Grand Jury Subpoena Duces Tecum,* 358 F.Supp. 661, 668 (D.Ind.1973). However, he is also apparently the custodian of the corporate records of James M. Feeney, P.C., and "[i]t is well settled that no privilege can be claimed by the custodian of corporate records, regardless of how small the corporation may be." *Bellis* 417 U.S. at 100, 94 S.Ct. at 2189 (citations omitted). The provisions of New York Business Corporation Law applicable to ordinary business corporations are applicable to professional corporations, Bus.Corp.Law § 1513, except as limited by professional and ethical obligations, *Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell,* 710 F.2d 87, 89 (2d Cir.1983), by statutory provisions regarding liability, N.Y.B.C.L. § 1505, and by the Appellate Division's regulation of law firms, N.Y.B.C.L. § 1503(e). Thus the business records of James M. Feeney, P.C., as all corporate records, are "by virtue of their character and the rules of law applicable to them ... held subject to examination by the state [and] do not contain the requi-

site element of privacy or confidentiality essential for the privilege to attach." (citations omitted). *Bellis* at 92, 94 S.Ct. at 2185. As the Second Circuit has put it, "[the respondent] 'chose the corporation in order to gain its attendant benefits; he cannot now disregard this form in order to shield its business records from production.'" *In Re Two Grand Jury Subpoenae Duces Tecum,* 769 F.2d at 59.

If Mr. Feeney, as the custodian of the corporate records, would be forced to incriminate himself by the act of production, the corporation must nevertheless fulfill its obligation to release the records. *See United States v. Barth,* 745 F.2d 184, 189 (2d Cir.1984), *cert. denied,* 470 U.S. 1004, 105 S.Ct. 1356, 84 L.Ed.2d 378 (1985). It can do so by appointing some other employee, or an entirely new agent, to produce the records.[4] *Ibid.*

### B. *Plaintiff's Request For Business Records*

■ Plaintiff also requested the production of business records from four non-party witnesses at their depositions: the law firms of Ellner & Ellner, John Selleck, Esq., Phillip Berg, Esq., and Reider, Abel and Kossin. Insofar as Ellner and Ellner has produced only cancelled checks paid to U.S. Life, it has not fully complied with legitimate discovery requests and shall permit plaintiff to examine the firm's check books and tax returns for the period dating August 1979 until August 1986. Although Ellner and Ellner has asked to be relieved of this task on the grounds of burdensomeness, the information sought is highly relevant to plaintiffs RICO claim, and is thus discoverable. *Cf. Sony Corp. v. S.W.I. Trading, Inc.,* 104 F.R.D. 535, 543–44 (S.D.N.Y.1985) (demand for cancelled checks of non-party not unreasonable when relevant to inquiry into defendant's alleged fraud and given defendant's suspicious activities).

■ Witnesses Selleck and Berg have not asserted any privilege to explain their failure to cooperate with discovery, and they shall therefore make available to plaintiff any and all requested business records, including cancelled checks and tax returns.

■ At the deposition of another law firm, Reeder, Abel and Kossin, the deponent offered to produce an abstract from the files of First Abstract Corp., an abstract company set up by the law firm, only if certain protective measures were taken. Reeder claims that the abstract is proprietary information going to the "heart and soul" of an abstract business. Plaintiff answers that the information is merely a compilation of public records, and therefore not privileged, and that it would be burdensome to comply with the proposed disclosure conditions. Under Rule 26(c)(7), the court has discretion to limit discovery so as to prevent unnecessary disclosure of confidential commercial information. Although, factual or statistical data is generally less privileged than analyses or opinions drawn from such data, *see Ross v. Bolton,* 106 F.R.D. 22, 23–24 (S.D.N.Y.1985), Reeder's request to have the abstract disclosed only to counsel for use solely in connection with this litigation is entirely reasonable given its commercial value. *See e.g., Chesa International, Ltd. v. Fashion Associates, Inc.,* 425 F.Supp. 234, 237 (S.D.N.Y.1977), *aff'd,* 573 F.2d 1288 (2d Cir.1977) (customer lists disclosed only to opposing counsel). Thus, Reeder should produce the requested abstract to plaintiff's counsel, subject to the confidentiality protections set out by Eric B. Levine, Esq. in his letter to me dated October 6, 1986.

### C. *Disclosure of Plaintiff's Financial Information*

■ U.S. Life requests that it be permitted to inquire into plaintiff's financial resources in order to establish whether or not she has adequate financial means to

**4.** Because the Fifth Amendment concerns are satisfied through the appointment of an agent to produce the records, we do not decide if the records at issue are "required records". *See In Re Doe,* 711 F.2d 1187, 1191 (2d Cir.1983).

reimburse her counsel for the cost of litigation. This information, according to U.S. Life, bears upon whether Mrs. Moll will "fairly and adequately protect the interests of the proposed class," pursuant to Fed.R. Civ.P. 23(a). The ability of a class representative to defray the cost of litigation is a relevant factor in the court's determination of the representative's suitability. *See Gordon v. Hunt,* 98 F.R.D. 573, 579 (S.D. N.Y.1983); *Greene v. Emersons Ltd.,* 86 F.R.D. 47 (S.D.N.Y.1980); *Kamens v. Horizon Corp.,* 81 F.R.D. 444 (S.D.N.Y.1979). Although the courts in the above cited cases certified the representatives whose financial abilities had been challenged, the fact that the courts considered the plaintiff's finances indicates the relevance of the information for discovery purposes. Questions concerning the details of a plaintiff's finances are completely irrelevant to class certification only when "there are no factors present which cast doubt on plaintiff's ability to reimburse counsel (e.g. pending bankruptcy or evidence of financial distress)." *Kamens v. Horizon Corp.,* 81 F.R.D. at 446.

■ In this case, U.S. Life has raised questions regarding Mrs. Moll's ability to pay for the litigation. Under *Kamens,* the information is therefore relevant for discovery purposes and must be disclosed. Nevertheless, at her deposition, Mrs. Moll stated that she accepted ultimate liability for litigation expenses, and her counsel, Paul K. Rooney, has agreed to advance the costs as is permitted under Canon 5, Disciplinary Rule 5–103(B) of the Code of Professional Responsibility. Deposition transcript of Jeryl Moll annexed to Letter of Paul K. Rooney, September 23, 1986. Ultimately, these measures may well satisfy the Court's concern for the suitability of the class representative. *Kamens* at 447; *Brama v. Raybills Finance Corp.,* 85 F.R.D. 568 (W.D.N.Y.1979).

### Conclusion

In accordance with this memorandum and order, the non-party witnesses shall appear at deposition and may claim the Fifth Amendment privilege only with respect to particular answers that would provide incriminating information. The requested documents shall be made available to plaintiff's counsel within ten days of the date of this order. Defendant's request to depose Mrs. Moll regarding her financial status is granted.

SO ORDERED.