551 S.E.2d 301

FIRST UNION NATIONAL BANK, Plaintiff,

v.

FIRST CITIZENS BANK AND TRUST COMPANY OF SOUTH CAROLINA, Defendant/Third–Party Plaintiff,

v.

Bruce Beach, d/b/a Cars Unlimited, Jay Crull, d/b/a Lowcountry Auto Sales; and Carl Maxfield and Toni Maxfield, d/b/a TLM Cars, Inc., Third–Party Defendants,

Of Whom First Union National Bank, First Citizens Bank and Trust Company of South Carolina, Bruce Beach, d/b/a Cars Unlimited, and Carl Maxfield and Toni Maxfield, d/b/a TLM Cars, Inc., are Respondents, and Jay Crull, d/b/a Lowcountry Auto Sales is Appellant.

No. 3377.

Court of Appeals of South Carolina.

Heard June 4, 2001.
Decided Aug. 6, 2001.

Benjamin Goldberg and Ivan Nossokoff, both of Charleston, for appellant.

G. Wells Dickson, Jr. and Gerald A. Kaynard; Richard S. Rosen and Kevin R. Eberle, both of Rosen, Goodstein & Hagood; W. Andrew Gowder, Jr., of Pratt–Thomas, Pearce, Epting & Walker, all of Charleston; and Thomas O. Mason, of Sherriff & Roof, of Columbia, for respondents.

HUFF, Judge:

In this civil action, Jay Crull asserted his state and federal constitutional rights against self-incrimination as the basis for

his refusal to answer discovery requests from First Citizens Bank and Trust Company of South Carolina ("First Citizens"). The trial court held Crull in contempt. We reverse.

## FACTS

On April 1,1998, First Union National Bank ("FUNB") sued First Citizens for wrongful dishonor and conversion, alleging First Citizens wrongfully stopped payment of a series of cashiers' checks, refused to pay or return sight drafts, and caused the Federal Reserve to charge FUNB the full amount of checks written by Crull on his FUNB account after FUNB stopped payment on the checks at Crull's order. First Citizens named Crull as a third-party defendant, alleging that Crull and other used car dealers were involved in a check-kiting scheme. First Citizens then served interrogatories and requests for production on Crull. In response, Crull asserted his state and federal constitutional rights against self-incrimination. Crull claimed he may be the subject of a criminal investigation conducted by the Federal Bureau of Investigation and United States Attorney's Office arising from the same facts and circumstances as the civil suit.

In reply, First Citizens filed a motion to compel a complete response to its discovery requests. The trial court granted First Citizens' motion, and ordered Crull to respond to all of the interrogatories and requests to produce that had been served upon him. Crull again failed to respond and a Rule to Show Cause was served on him. Crull responded to the Rule to Show Cause by partially answering the discovery requests and reasserting his privilege against self-incrimination on the remaining requests. In addition, Crull offered a letter by a special agent of the FBI to the United States Attorney confirming that a criminal investigation into the subject of the civil suit was opened as a direct result of a report it received from FUNB's special investigation unit. The letter further confirmed that the investigation was incomplete and continuing. Following the hearing on the Rule to Show Cause, the trial court held Crull in contempt for failing to respond fully to the discovery requests as ordered.

Crull subsequently produced another discovery response to the court under seal but did not provide the information to

First Citizens. He then filed a motion to reconsider the contempt order, which the trial court denied. Crull appealed the contempt order.

## STANDARD OF REVIEW

This court will reverse a trial court's decision regarding contempt only if it is without evidentiary support or is an abuse of discretion. *Stone v. Reddix–Smalls,* 295 S.C. 514, 369 S.E.2d 840 (1988); *Dale v. Dale,* 341 S.C. 516, 534 S.E.2d 705 (Ct.App.2000). An abuse of discretion can occur where the trial court's ruling is based on an error of law. *Henderson v. Puckett,* 316 S.C. 171, 447 S.E.2d 871 (Ct.App.1994) (citing 16 S.C. Juris. *Appeal and Error* § 124 at 31–32 (1992)).

## LAW/ANALYSIS

Crull argues that the trial court's refusal to accept his assertion of his privilege against self-incrimination violated his constitutional rights. We agree.

The Fifth Amendment of the United States Constitution provides in relevant part, "No person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. The South Carolina Constitution includes the same protection. *See* S.C. Const. art I, § 12 ("[N]or shall any person be compelled in any criminal case to be a witness against himself."). The South Carolina Supreme Court described the importance of the privilege against self-incrimination:

> The framers of the Bill of Rights recognized the dangers inherent in self-incrimination, and as a result, placed in the Fifth Amendment a prohibition against compelling a witness to testify against himself. This prohibition against compelled self-incrimination is a basic constitutional mandate which is not a mere technical rule, but rather, a fundamental right of every citizen in our free society. To this end, the framers of the South Carolina Constitution extended this same protection in our own State Constitution.

*State v. Thrift,* 312 S.C. 282, 296, 440 S.E.2d 341, 349 (1994).

A witness may assert this constitutional privilege "in any proceeding, civil or criminal, administrative or judicial,

investigatory or adjudicatory. . . ." *Kastigar v. United States,*
406 U.S. 441, 444, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); *see In
Re: Hearing Before Joint Legislative Committee, Ex parte
Johnson,* 187 S.C. 1, 196 S.E. 164 (1938) (stating the privilege
applies to any tribunal or other body that has the power to
subpoena and compel the attendance of witnesses). The privi-
lege "protects against any disclosures that the witness reason-
ably believes could be used in a criminal prosecution or could
lead to other evidence that might be so used." *Kastigar,* 406
U.S. at 445, 92 S.Ct. 1653. It extends not only to answers that
would in themselves support a conviction but likewise encom-
passes those that would furnish a link in the chain of evidence
needed to prosecute the witness for a crime. *United States v.
Hubbell,* 530 U.S. 27, 120 S.Ct. 2037, 147 L.Ed.2d 24 (2000).
Thus, "[c]ompelled testimony that communicates information
that may 'lead to incriminating evidence' is privileged even if
the information itself is not inculpatory." *Id.* at 38, 120 S.Ct.
2037 (quoting *Doe v. United States,* 487 U.S. 201, 208, n. 6, 108
S.Ct. 2341, 101 L.Ed.2d 184 (1988)). The privilege is available
even if the risk of criminal prosecution is remote; the witness
only has to show that there is a possibility, and not a likeli-
hood, of prosecution. *Moll v. U.S. Life Title Insurance
Company of New York,* 113 F.R.D. 625 (S.D.N.Y.1987).

■ It is a matter for the court to consider and decide
whether a direct answer to a question can implicate the
witness. *Hoffman v. United States,* 341 U.S. 479, 71 S.Ct.
814, 95 L.Ed. 1118 (1951); *Ex parte Johnson,* 187 S.C. at 16,
196 S.E.2d at 170 ("When a question is propounded, it belongs
to the Court to consider and decide whether any direct answer
to it can implicate the witness."). However, the court should
give deference to the witness in determining this matter.

The United States Supreme Court explained,

[I]f the witness, upon interposing his claim, were required
to prove the hazard in the sense in which a claim is usually
required to be established in court, he would be compelled
to surrender the very protection which the privilege is
designed to guarantee. To sustain the privilege, it need
only be evident from the implications of the question, in the
setting in which it is asked, that a responsive answer to the
question or an explanation of why it cannot be answered

might be dangerous because injurious disclosure could result.

*Hoffman*, 341 U.S. at 486–87, 71 S.Ct. 814.

The South Carolina Supreme Court reasoned:

It is certainly not only a possible, but a probable, case, that a witness, by disclosing a single fact, may complete the testimony against himself, and to every effectual purpose accuse himself as entirely as he would by stating every circumstance which would be required for his conviction. The fact of itself might be unavailing; but all other facts without it might be insufficient.... [T]he witness must himself judge what his answer will be, and if he say, on oath, that he cannot answer without accusing himself, he cannot be compelled to answer.

*Ex parte Johnson*, 187 S.C. at 16–17, 196 S.E.2d at 170–71 (citation omitted).

■ Crull consistently asserted his privilege against self-incrimination in response to the following interrogatories:

● For each witness identified, please set forth a summary of the important facts known to or observed by such witness.[1]

● Please list each bank at which third-party defendant or any entity owned in whole or in part by third-party defendant has maintained an account of any kind during the last ten years. For each such bank, please identify all accounts by number, the date on which the account was opened, whether the account has been closed, and the closing date if appropriate.

● Please describe the method by which third-party defendant Beach would acquire titles to automobiles sold by third-party defendant Maxfield or Crull.

The trial court found Crull failed to carry his burden of showing there is a reasonable likelihood that a response will lead to incrimination. We hold this finding is in error.

In *Moll*, the plaintiff brought a class-action lawsuit against an insurance company alleging the insurance company had been paying kickbacks to real estate attorneys. The plaintiff

---

1. Crull provided a summary for all witnesses other than himself.

sought discovery from the attorneys. The district court found that because the "attorneys are alleged to be participants in a kickback scheme and subject to criminal penalties, they are 'confronted by substantial and real and not merely trifling or imaginary hazards of incrimination.'" *Moll,* 113 F.R.D. at 628 (quoting *United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984)). Thus, the court held that although none of the attorneys was a defendant in the civil action and no criminal investigation appeared to be pending, the constitutional privilege against self-incrimination would apply where appropriate. *Id.*

In its third-party complaint, First Citizens alleged Crull engaged in a check-kiting scheme. Such allegations if true would subject Crull to criminal penalties for financial institution fraud. Under the reasoning in *Moll,* this substantial and real hazard of incrimination would be sufficient to support Crull's assertion of the privilege against self-incrimination even absent evidence of an ongoing criminal investigation.

Furthermore, Crull offered evidence in the form of the affidavit from his attorney and the letter from the FBI agent to show that there was, in fact, an ongoing criminal investigation into the very same facts and circumstances of the civil suit. The FBI agent confirmed that the investigation involves bank sight drafts and alleged check-kiting and includes Jay Crull and the business, Lowcountry Auto Sales.

Upon examination of the interrogatories we find that the trial court erred in concluding that no answer or response to these discovery requests could have the effect of incriminating or tending to incriminate Crull, or causing him to disclose some information might provide a link in a chain of evidence against him. Thus, we conclude Crull was justified in exercising his constitutional right to refuse to answer the interrogatories.

■■■ Crull also asserted his privilege against self-incrimination in response to the following requests to produce:

- Copies of all documents generated or received by the Third–Party Defendant regarding the allegations in the Complaint and/or the Answer and Third–Party Complaint.
- All documents which the Third–Party Defendant intends to use at trial:

● All documents referenced in the Complaint and/or the Answer and Third–Party Complaint.

● All drafts, front and back, which are at issue in this case: those deposited with the Plaintiff by Jay Crull d/b/a Low-country Auto Sales, and Carl Maxfield and Toni Maxfield d/b/a TLM Cars, Inc., which the Plaintiff forwarded to the Defendant from November 1, 1997 to January 5, 1998.

● Copies of all bank account records covering any account of Third–Party defendant during the period of November 1, 1987 through January 15, 1998.

The United States Supreme Court has held a person may be required to produce certain documents even though they contain incriminating information. *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). The court reasoned the privilege protects a person only against being incriminated by his own compelled testimonial communications. *Id.* Thus, the constitutional privilege against self-incrimination is not violated by the fact alone that business records, which were prepared voluntarily, on their face might incriminate the person from whom they are sought. However, the act of production itself may implicitly communicate statements of fact and be considered compelled testimony. *Hubbell*, 530 U.S. at 36, 120 S.Ct. 2037. The privilege protects against production of documents when by producing the documents, the witness would be admitting that the papers existed, were in his possession or control, or were authentic. *Id.*

Crull's production of his bank records from his account with FUNB may not have risen to the level of testimony within the protection of the privilege as "[t]he existence and location of the papers are a foregone conclusion and [Crull would add] little or nothing to the sum total of the Government's information by conceding that he in fact has the papers." *See Fisher*, 425 U.S. at 411, 96 S.Ct. 1569. First Citizens' counsel admitted at oral argument that the bank already had received these records. He asserted that First Citizens bank was trying to discover information about unknown bank accounts and activities that would link Crull to other instances of check-kiting to show that FUNB knew or should have known that Crull and the other Third–Party Defendants were involved in illegal check-kiting.

If Crull produced the documents First Citizens is seeking, he would be admitting the existence of the documents, and thus the existence of other bank accounts and activities. He would also be admitting that the documents were in his possession or control or were authentic. As is First Citizens' stated objective, Crull's admission could lead to evidence of other check-kiting activity. Thus, his compelled testimony in producing the documents could furnish a link in the chain of evidence needed to prosecute Crull for financial institution fraud. We therefore conclude Crull was justified in exercising his constitutional right to refuse to respond to the requests to produce.

We hold the trial court abused its discretion by holding Crull in contempt and rejecting his right to assert the privilege against self-incrimination.

Based upon the foregoing, the order of the trial court is

**REVERSED.**

ANDERSON and SHULER, JJ., concur.