THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT
BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING
EXCEPT AS PROVIDED BY RULE 239(d)(2), 
 SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Jadie C. Rayfield,       
Appellant,
 
 
 

v.

 
 
 
LifeQuest,       
Respondent.
 
 
 

Appeal From Charleston County
Roger M. Young, Circuit Court Judge

Unpublished Opinion No. 2005-UP-103
Submitted January 1, 2005  Filed February 10, 2005

AFFIRMED

 
 
 
Marvin Lee Robertson, Jr., of Mt. Pleasant, for Appellant
Steven McKelvey and Thomas William McGee, III, both of Columbia, for Respondent.
 
 
 

PER CURIAM:   Jadie C. Rayfield appeals 
 the circuit courts order dismissing a rule to show cause, arguing the court 
 erred in finding no contempt of its order prohibiting the transfer of assets 
 by a judgment debtor in Rayfields personal injury action.  We affirm. 
FACTS
Rayfield brought a personal injury action in 1998 
 in connection with injuries he sustained while using weightlifting equipment 
 at LifeQuest Fitness Center in Mount Pleasant.  In January 2000, he obtained 
 a $35,000 default judgment against LIFEQUEST and subsequently filed an execution 
 against property that was executed nulla bona.  
This case involves multiple corporate entities 
 with similar names, a common registered agent for service of process, and some 
 common shareholders.  The first entity is Life Quest, Inc. (LQ1), which incorporated 
 in August 1991.  In January 1992, LQ1s shareholders changed the companys name 
 to LifeQuest of Mount Pleasant, Inc. (LQMP) and filed the change with the secretary 
 of states office in April 1992.  The second entity, LifeQuest, Inc. (LQ2), 
 incorporated in April 1992.  The third entity, LifeQuest of Charleston, Inc., 
 (LQC) incorporated later.  Wayne K. Caparas served as the registered agent for 
 each of these corporations. Steve DeGuzman and he owned LifeQuest shares.  
From 1992 to 1994, entities identified 
 as Life Quest, Inc. or LifeQuest, Inc. opened utility accounts with South 
 Carolina Electric and Gas, Inc. (SCE&G) for Mount Pleasant and Charleston 
 locations.  The entities made security deposits with SCE&G to open the accounts. 

In 1998, a foreclosure action against LQMP and 
 LQC resulted in the judicial sale of all of their assets.  SSN, Inc. purchased 
 LQMPs assets and SKS, Inc. purchased LQCs assets.  Timothy R. Sebold was SSNs 
 registered agent for service of process.  
In November 2002, following return of the nulla 
 bona execution, Rayfield obtained a circuit court order for supplemental 
 proceedings seeking to determine whether his judgment debtor, generally referred 
 to as LifeQuest, possessed any nonexempt property and assets that could be 
 used to satisfy his judgment.  Among other things, the order enjoined the judgment 
 debtor  from making any transfer or other disposition of the property of the 
 judgment debtor, including  any funds due to the judgment debtor.  In February 
 2003, the court filed a second order for supplemental proceedings with a similar 
 prohibition on asset transfers after Rayfield discovered SCE&G held approximately 
 $19,375 of deposits in LifeQuests name. 
Later in February 2003, Caparas and DeGuzman went to SCE&G 
 and requested that the LifeQuest accounts be closed and the deposits be refunded 
 to them.  SCE&G closed the accounts as requested.  However, pursuant to 
 company policy, SCE&G first applied the deposits against LifeQuests unpaid 
 bill and current usage.  SCE&G did not terminate service because LifeQuest 
 continued to operate in the buildings.  Instead, it opened new accounts in SSNs 
 name and credited the remainder of the deposits to the new accounts.  
The court issued a rule to show cause in March 
 2003.  After a hearing, the court dismissed the rule to show cause, finding 
 SSN had bought all LifeQuest assets, including rights to the SCE&G deposits, 
 at the 1998 foreclosure sale.  Rayfields motion to reconsider was denied.  
 This appeal followed.
 STANDARD OF 
 REVIEW
This appeal comes to us in the posture of a dismissal 
 of a rule to show cause.  As such, we may reverse the trial courts decision 
 regarding contempt only if it is without evidentiary support or is an abuse 
 of discretion.  Stone v. Reddix-Smalls, 295 S.C. 514, 516, 369 S.E.2d 
 840, 840 (1988).  An abuse of discretion occurs where the trial courts ruling 
 is based on an error of law.  First Union Natl Bank v. First Citizens Bank 
 & Trust Co., 346 S.C. 462, 466, 551 S.E.2d 301, 303 (Ct. App. 2001).
DISCUSSION
Having carefully reviewed the 
 record, and based on our deferential standard of review, we find evidence to 
 support the findings of the trial court, even if were to consider the conflicting 
 evidence proferred by Rayfield.  Moreover, the confusion engendered by the various 
 corporate entities leads us to additionally conclude that, in any event, there 
 was no willful disobedience of a court order.  See IOn, L.L.C. v. 
 Town of Mt. Pleasant, 338 S.C. 406, 417, 526 S.E.2d 716, 722 (2000) (stating 
 that the appellate court may affirm for any reason appearing in the record).
It is well settled that contempt 
 results from willful disobedience of a court order; and before a person may 
 be held in contempt, the record must be clear and specific as to acts or conduct 
 upon which the contempt is based.  Cheap-Os Truck Stop, 350 S.C. 596, 
 607, 567 S.E.2d 596, 519 (Ct. App. 2002).  A willful act is defined as one 
 done voluntarily and intentionally with the specific intent to do something 
 the law forbids, or with the specific intent to fail to do something the law 
 requires to be done; that is to say with bad purpose either to disobey or disregard 
 the law.  Id. at 607-08, 567 S.E.2d at 520.
 AFFIRMED. 
 HUFF, KITTREDGE, and BEATTY, JJ., concur.