State Grand Jury Act

THIS OPINION HAS NO PRECEDENTIAL 
 VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING 
 EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State,       
Respondent,
 
 
 

v.

 
 
 
Kenneth E. Sowell,       
Appellant.
 
 
 

Appeal From Greenwood County
Wyatt T. Saunders, Jr, Circuit Court 
 Judge

Unpublished Opinion No. 2005-UP-122
Heard November 10, 2004  Filed February 
 17, 2005

AFFIRMED

 
 
 
Kenneth E. Sowell, of Greenville, pro se, for Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney 
 General John M. McIntosh, Chief, State Grand Jury, Sherri A. Lydon, and Assistant 
 Attorney General Jennifer D. Evans, all of Columbia, for Respondent.
 
 
 

PER CURIAM:  Kenneth Sowell appeals the 
 circuit courts order finding him in criminal contempt for disclosing grand 
 jury information subject to a protective order.  We affirm.
FACTS
The State Grand Jury conducted an investigation 
 into a methamphetamine ring in Greenville, Greenwood, and Laurens counties.  
 As a result of this investigation, the grand jury true-billed an indictment 
 against Bobby Joe Lewis for trafficking and conspiracy to traffic methamphetamine.  
 After being charged, Lewis hired Sowell to represent him on the charges.  Sowell 
 came into contact with Lewis through Kenneth Curtis, who was also a target of 
 the investigation and previously a client of Sowell.  According to Curtis, 
 he paid Sowell to represent Lewis with the understanding that if Lewis intended 
 to flip, Sowell would let him know. 
In the course of his representation of Lewis, Sowell 
 requested that the Attorney Generals office provide him with information that 
 was part of the grand jury investigation.  Because the Legislature has 
 deemed this information to be secret, its dissemination is governed by the provisions 
 of section 14-7-1720 of the South Carolina Code of Laws.  S.C. Code Ann. § 14-7-1720(A) 
 (Supp. 2004) (State grand jury proceedings are secret, and a state grand juror 
 shall not disclose the nature or substance of the deliberations or vote of the 
 state grand jury.); see Anderson v. State, 338 S.C. 629, 632, 
 527 S.E.2d 398, 399 (Ct. App. 2000) (recognizing this states long-held policy 
 regarding the secrecy surrounding grand jury proceedings).  
Pursuant to this statute, the Attorney General 
 may not disclose the testimony of a witness examined before a state grand jury 
 or other evidence received by it except when directed by a court for the purpose 
 of . . . providing the defendant the materials to which he is entitled pursuant 
 to Section 14-7-1700.  S.C. Code Ann. § 14-7-1720(A)(4)(Supp. 2004); see 
 S.C. Code Ann. § 14-7-1700 (Supp. 2004) (Subject to the limitations of Section 
 14-7-1720(A) and (D) and Rule 5, South Carolina Rules of Criminal Procedure, 
 a defendant has the right to review and to reproduce the stenographically or 
 electronically recorded materials.).  If the court orders disclosure of matters 
 occurring before a state grand jury, the disclosure must be made in that manner, 
 at that time, and under those conditions as the court directs.  S.C. Code Ann. 
 § 14-7-1720(A) (Supp. 2004).
In this case, the judge issued a protective order 
 that permitted the dissemination of the grand jury information to Sowell, but 
 imposed certain conditions on the disclosure.  The order provides in relevant 
 part:

IT IS HEREBY ORDERED that the Attorney General is protected 
 if he chooses to disclose to the attorneys for the defendants in the above-captioned 
 cases testimony taken in the State Grand Jury and interviews of witnesses and 
 other documents which must subsequently be disclosed under normal circumstances 
 at trial.  It is understood that the State Grand Jury material is being provided 
 only for purposes of the trial of the above-captioned cases.  The attorney for 
 the defendants and the defendants are bound by the secrecy provisions of § 14-7-1720.
IT IS FURTHER ORDERED that, pursuant to S.C. Code Ann. §§ 
 14-7-1700 and 1720(A) (Law. Co-op. 1976), the defendants and their attorneys 
 are prohibited from photocopying any State Grand Jury testimony, interviews 
 of witnesses and any other documents that may be disclosed to the defendants 
 and their attorneys in reference to the above-captioned case.  All such materials 
 shall be completely destroyed at the conclusion of the case.  
Nothing in this Order prohibits the defendants or their attorneys 
 from using Brady material for purposes of preparing for trial.

The relevant materials were made available to Sowell 
 after the protective order was signed.  Sowell admits the information was shared 
 with Gene Gore, a private investigator Sowell had employed numerous times.  
 Sowell testified he informed Gore that the information he was sharing with him 
 could not be given to anyone and the documents must be kept under lock and 
 key at all times.
Significantly, Gore also sold used cars, and Kenneth 
 Curtis had previously purchased five or six cars from him.  It was ultimately 
 revealed that Curtis paid Gore for his investigative services.  A portion of 
 the evidence subject to the court order led to another member, Floyd Ballew, 
 of the methamphetamine ring who implicated Curtis.  Gore found Ballew and had 
 him sign an affidavit to this affect.  Gore then used this affidavit to confront 
 Curtis in an attempt to acquire information.  
This disclosure of information by Gore to Curtis 
 was revealed when Curtis was caught on a confidential informants tape stating 
 he was aware he was the subject of the State Grand Jury investigation.  Based 
 on this information, the State filed a motion for Sowell to show cause why he 
 was not guilty of criminal contempt. 
After a hearing, the trial judge found Sowell guilty 
 of criminal contempt of court for willfully disclosing information subject to 
 a protective order.  Specifically, the judge held the State clearly established 
 that [Sowell] was not directed by the Court to release this information to Gore 
 nor did he explain the secrecy requirement of the Protective Order.  The 
 judge sentenced Sowell to ninety days imprisonment suspended upon the payment 
 of a $5,000 fine within ninety days.  Subsequently, Sowell filed a motion for 
 reconsideration.  The judge denied this motion, but reduced the amount 
 of the fine to $2,500.  
Sowell appeals his conviction of criminal contempt 
 of court.
STANDARD OF REVIEW
A determination of contempt ordinarily resides 
 in the sound discretion of the trial court.  Whetstone v. Whetstone, 
 309 S.C. 227, 233, 420 S.E.2d 877, 880-81 (Ct. App. 1992).  This court will 
 reverse a trial courts decision regarding contempt only if it is without evidentiary 
 support or is an abuse of discretion.   An abuse of discretion can occur where 
 the trial courts ruling is based on an error of law.  First Union Natl 
 Bank v. First Citizens Bank & Trust Co. of South Carolina, 346 S.C. 
 462, 466, 551 S.E.2d 301, 303 (Ct. App. 2001) (citations omitted).
DISCUSSION
Sowell argues the circuit court judge erred in 
 finding him in criminal contempt. 
 [1]   He contends he was permitted to reveal grand jury information to his 
 investigator and, thus, there was no evidence to support the judges decision.  
 We disagree. 
The power to punish for contempt is inherent in 
 all courts and is essential to the preservation of order in judicial proceedings.  
 In re Diggs, 344 S.C. 434, 434, 544 S.E.2d 632, 632 (2001).  A courts 
 contempt power arises when an individual willfully disobeys an order of the 
 court.  Id.  A willful act is defined as one done voluntarily and intentionally 
 with the specific intent to do something the law forbids, or with the specific 
 intent to fail to do something the law requires to be done; that is to say, 
 with bad purpose either to disobey or disregard the law.  Spartanburg County 
 Dept of Soc. Servs. v. Padgett, 296 S.C. 79, 82-83, 370 S.E.2d 872, 874 
 (1988) (quoting Blacks Law Dictionary 1434 (5th ed. 1979)).  Intent 
 for purposes of criminal contempt is subjective, not objective, and must necessarily 
 be ascertained from all of the acts, words and circumstances surrounding the 
 occurrence. State v. Bevilacqua, 316 S.C. 122, 129, 447 S.E.2d 213, 
 217 (Ct. App. 1994).  
However, [o]ne may not be convicted of contempt 
 for violating a court order which fails to tell him in definite terms what he 
 must do.  Welchel v. Boyter, 260 S.C. 418, 421, 196 S.E.2d 496, 498 
 (1973).  In a criminal contempt proceeding, the State has the burden of proving 
 the guilt of the defendant beyond a reasonable doubt.  State v. Bowers, 
 270 S.C. 124, 131, 241 S.E.2d 409, 412 (1978).  [B]efore a person may be held 
 in contempt, the record must be clear and specific as to acts or conduct upon 
 which such finding is based.  State v. Harper, 297 S.C. 257, 258, 376 
 S.E.2d 272, 274 (1989).   
As a threshold matter, we note that Sowell neither 
 challenges the validity of the order nor the application of section 14-7-1720 
 to him. [2]   Therefore, we do not analyze this issue.  
 Instead, he admits disclosure of the material to his investigator, but claims 
 this disclosure did not violate the protective order. 
Section 14-7-1700 grants a defendant the right 
 to review and reproduce grand jury material.  This right is limited by the strictures 
 of sections 14-7-1720(A) and (D), as well as Rule 5 of the South Carolina Rules 
 of Criminal Procedure.  Section 14-7-1720(A) requires that the disclosure to 
 the defendant must be made in that manner, at that time, and under those conditions 
 as the court directs.  By the terms of the order, the judge imposed on Sowell 
 the same secrecy provisions that are applicable to the Attorney General under 
 section 14-7-1720(B). [3]   Therefore, if Sowell intended 
 to disclose this information to Gore in order to prepare an adequate defense 
 for Lewis, he was bound by the mandatory language of section 14-7-1720(B)(2), 
 which provides in pertinent part:

The Attorney General or his designee promptly shall provide 
 the presiding judge before whom was impaneled the state grand jury whose material 
 has been disclosed, the names of the persons to whom the disclosure has been 
 made, and shall certify that he has advised these persons of their obligation 
 of secrecy under this section.

S.C. Code Ann. §14-7-1720 (B)(2) (Supp. 2004). [4]   
          Applying these provisions to the instant case, 
 we hold the judges decision was not based on an error of law given he relied 
 on the appropriate legal standards for a finding of contempt.  In determining 
 Sowell willfully violated the protective order, the judge found the State presented 
 clear and specific evidence of Sowells conduct and that Sowell was guilty beyond 
 a reasonable doubt.
Furthermore, the trial judge sat as the trier of 
 facts.  Thus, based on our limited standard of review, we will not disturb his 
 findings unless they are without evidentiary support.  We find there is evidence 
 to support the judges ruling.  First, there is no dispute that Sowell failed 
 to inform the court that he disclosed the grand jury material to Gore until 
 prompted by the States motion for a rule to show cause.  In terms of the second 
 requirement under section 14-7-1720(B)(2), the judge concluded Sowell failed 
 to explain to Gore the obligation of secrecy.  In support of this ruling, the 
 judge implicitly rejected the testimony of Sowell and, instead, found Gore and 
 Curtis to be credible witnesses.  We give due deference to the trial judges 
 consideration of credibility matters.  See Cherry v. Thomasson, 
 276 S.C. 524, 525, 280 S.E.2d 541, 541 (1981) (On appeal, this court is not 
 required to ignore the fact that the trial judge, who saw and heard the witnesses, 
 was in a better position to evaluate their credibility and assign comparative 
 weight to their testimony.).  
In his findings of fact, the judge stated Gore 
 testified, he was not given any instruction regarding the release of this information 
 to any other individuals from the Defendant.  Additionally, Gore admits that 
 the information contained in this material was related to Mr. Kenny Curtis.  
 As to Curtis, the judge found that Curtis testified that he was kept apprized 
 throughout this investigation of the material that pertained to him and paid 
 Gore five thousand dollars ($5,000) to act as a private investigator for the 
 Defendant.  These findings are supported by the testimony of Gore and 
 Curtis.  Based on the specific facts of this case and our limited standard of 
 review, we hold the judge did not abuse his discretion in finding Sowell in 
 criminal contempt of the protective order.  
 This decision should not be interpreted 
 to mean that a defense attorney is precluded from disclosing state grand jury 
 material to his or her staff or investigator.  This position, which the State 
 appeared to advocate at oral argument, would put defense counsel at a disadvantage 
 in that it would severely limit counsels ability to prepare an adequate defense.  
 However, if disclosure is permitted then defense counsel must abide by the conditions 
 imposed by a court pursuant to section 14-7-1720(A).  By requiring defense counsel 
 to proceed through the proper channels, similar to the State, the court will 
 be able to preserve the sanctity of grand jury material.
CONCLUSION
Based on the foregoing, the circuit court judges 
 finding of criminal contempt is
AFFIRMED.
HUFF, KITTREDGE, and BEATTY, JJ., concur.   
 

 
 
 [1]   We note Sowell raises five separate issues in his brief.  Because 
 all of the issues challenge the finding of contempt, we have consolidated 
 them in the interest of clarity.

 
 
 [2]    The plain language of section 14-7-1720 applies only to jurors, 
 individuals involved in the state grand jury process, and law enforcement 
 personnel who are entitled to the information under subsection (B) based on 
 their assistance to the Attorney General.  Therefore, the secrecy provisions 
 of section 14-7-1720 would not apply to Sowell unless the judge, as in this 
 case, limited the use of the information pursuant to the courts power to 
 condition the disclosure of information.  S.C. Code Ann. § 14-7-1720 (A) (Supp. 
 2004).

 
 
 [3]    In the protective order, the judge only generally referenced the 
 secrecy provisions of section 14-7-1720.  However, in the contempt 
 order, the judge specifically relied on subsection A when he concluded that 
 Sowell failed to obtain prior approval of the court before disclosing the 
 information.  The judge also implicitly relied on subsection B in finding 
 that Sowell failed to explain to Gore the secrecy requirement of the protective 
 order.  The judges reliance on subsection A would appear to be inapplicable 
 to Sowell given that subsection controls the initial disclosure to the Attorney 
 General and forms the basis for the protective order.  Based on our review 
 of section 14-7-1720, we believe the procedure governing Sowells disclosure 
 of the grand jury information was controlled by section 14-7-1720(B)(2), which 
 does not require prior approval of the court.   This error, as will be discussed, 
 does not affect our ultimate decision.

 
 
 [4]    We note that the language of our state statute is similar to that 
 of Rule 6(e)(3) of the Federal Rules of Criminal Procedure.  See State 
 v. Follin, 352 S.C. 235, 246, 573 S.E.2d 812, 817 (Ct. App. 2002) (Federal 
 Rule of Criminal Procedure 6(e) is very similar to our statute regarding disclosure 
 of secret information to subsequent grand juries.).    Despite the fact that 
 our statute tracks the language of the federal rule, our research has not 
 revealed any federal case law that provides definitive guidance on the issue 
 presented in this appeal.  See Sara Sun Beale, et al., Grand 
 Jury Law and Practice §5:7 (2d ed. 2003), available in Westlaw, 
 GRJURLAW (In particular, it is not clear whether [Rule 6(e)(3)(A)(i)] permits 
 the attorney to make further disclosures of the grand jury materials to others.); 
 Id. ([T]he courts are not likely to accept any argument that disclosures 
 to private investigators assisting the prosecutors with a criminal case would 
 be permitted under the performance of duties clause since the same disclosure 
 would be barred by the more specific subsection of the Rule that governs disclosures 
 to agents assisting the government in the criminal case.  By contrast, a prosecutors 
 disclosure of grand jury materials to his secretary, paralegal, or law clerk 
 would be regarded as routine disclosure closely tied to the prosecutors role 
 in conducting the grand jury proceeding and any subsequent criminal action.); 
 1 Charles Alan Wright, Federal Practice and Procedure § 107, at 398-400  
 (3d ed. 1999) ([M]achinery has now been provided by which federal prosecutors 
 can utilize, without a court order, other government personnel.  The government 
 personnel to whom grand-jury material is disclosed under this provision cannot 
 use the material in a manner that would not be permissible for the government 
 attorney himself.).  Given the divergent views analyzing this issue and the 
 fact that Sowell does not challenge the validity of the protective order, 
 we have chosen not to establish a bright line rule for a defense attorneys 
 disclosure of grand jury information.  Instead, we limit our review of this 
 issue by applying the facts of the instant case to our state statutory language 
 within the context of our limited standard of review.